# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| THERAVANCE BIOPHARMA R&D IP, LLC, THERAVANCE BIOPHARMA US, INC., THERAVANCE BIOPHARMA IRELAND LIMITED, MYLAN IRELAND LIMITED, and MYLAN SPECIALTY L.P., | ) ) ) ) ) ) ) | |
| | ) | C.A. No.: 1:23-cv-157 |
| Plaintiffs, | ) ) | ***Document Filed Electronically*** |
| v. | ) ) ) | |
| ACCORD HEALTHCARE, INC., ACCORD HEALTHCARE, LTD., and INTAS PHARMACEUTICALS LTD., | ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Theravance Biopharma R&D IP, LLC, Theravance Biopharma Ireland Limited, Theravance Biopharma US, Inc., Mylan Ireland Limited, and Mylan Specialty L.P. (collectively, "Plaintiffs"), by their attorneys, for their Complaint against Defendants Accord Healthcare, Inc. ("Accord Inc."), Accord Healthcare, Ltd. ("Accord Ltd."), and Intas Pharmaceuticals Ltd. ("Intas") (collectively, "Accord"), hereby allege as follows:

## NATURE OF THE ACTION

1. This is a civil action for infringement of United States Patent Nos. 8,541,451 (the "'451 patent"), 9,765,028 (the "'028 patent"), 10,550,081 (the "'081 patent"), 11,008,289 (the "'289 patent"), and 11,484,531 (the "'531 patent") (collectively, the "Patents-in-Suit") arising under the Patent Laws of the United States, Title 35, United States Code, Section 1 *et seq*. This action relates to Abbreviated New Drug Application

("ANDA") No. 218100, filed by Accord, with the United States Food and Drug Administration ("FDA") for approval to market a generic version of YUPELRI® (revefenacin) inhalation solution, for oral inhalation, prior to the expiration of patents listed in FDA's publication, *Approved Drug Products with Therapeutic Equivalence Evaluations* (commonly known as the "Orange Book") for YUPELRI®.

## THE PARTIES

### Plaintiffs

2. Plaintiff Theravance Biopharma R&D IP, LLC is a Delaware limited liability company having a principal place of business at 901 Gateway Boulevard, South San Francisco, CA, 94080.

3. Plaintiff Theravance Biopharma US, Inc. is a Delaware corporation having a principal place of business at 901 Gateway Boulevard, South San Francisco, CA, 94080.

4. Plaintiff Theravance Biopharma Ireland Limited is an Irish company having a registered office at Ten Earlsfort Terrace, Dublin 2, D02 T380, Ireland.

5. Plaintiff Mylan Ireland Limited is a company having a principal place of business at Newenham Court, Northern Cross, Malahide Road, Dublin 17, Ireland; and a registered office at Unit 35/36, Grange Parade, Baldoyle Industrial Estate, Dublin 13, Ireland.

6. Plaintiff Mylan Specialty L.P. is a company having a principal place of business at 3711 Collins Ferry Road, Morgantown, West Virginia, 26505.

7. Plaintiff Mylan Specialty L.P. sells YUPELRI® in this judicial district and throughout the United States.

2

8. Plaintiffs Mylan Specialty L.P. and Theravance Biopharma US, Inc. promote and market YUPELRI® in the United States.

9. Theravance Biopharma R&D IP, LLC is the assignee of the Patents-in-Suit. Theravance Biopharma R&D IP, LLC is a wholly owned subsidiary of Theravance Biopharma Ireland Limited.

10. Theravance Biopharma Ireland Limited is the exclusive licensee, and Mylan Ireland Limited is the exclusive sub-licensee, of the Patents-in-Suit. Mylan Ireland Limited is also the holder of approved New Drug Application No. 210598 for YUPELRI® (revefenacin) inhalation solution, for oral inhalation (the "YUPELRI® NDA").

**Accord**

11. On information and belief, Defendant Accord Inc. is a company organized and existing under the laws of the State of North Carolina, with its principal place of business at 1009 Slater Road, Suite 210B, Durham, North Carolina 27703.

12. On information and belief, Defendant Accord Ltd. is a company organized and existing under the laws of India, with its principal place of business at Near Sola Bridge, Sarkhej – Gandhinagar Highway, Thaltej, Ahmedabad, Gujarat 380054, India.

13. On information and belief, Defendant Intas is a company organized and existing under the laws of India, with its principal place of business at Near Sola Bridge, Sarkhej – Gandhinagar Highway, Thaltej, Ahmedabad, Gujarat 380054, India.

14. On information and belief, Accord Inc. is a wholly owned subsidiary of Intas.

15. On information and belief, Accord Ltd. is a wholly owned subsidiary of Intas.

16. On information and belief, Accord Inc., Accord Ltd., and Intas acted in concert to prepare and submit ANDA No. 218100 (the "Accord ANDA") to FDA to engage

3

in the commercial manufacture, use, sale or offer for sale within or importation into, the United States, including, on information and belief, in the State of North Carolina, of a generic version of YUPELRI® (revefenacin) inhalation solution (the "Accord ANDA Product"), for oral inhalation, prior to the expiration of the Patents-in-Suit.

17. On information and belief, following any FDA approval of the Accord ANDA, Accord Inc., Accord Ltd., and Intas will act in concert to commercially manufacture, import, market, offer for sale, distribute, and/or sell the Accord ANDA Product throughout the United States, including within the State of North Carolina.

## JURISDICTION AND VENUE

18. Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

19. This action arises under the patent laws of the United States, 35 U.S.C. § 1, *et seq*., including 35 U.S.C. § 271.

20. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 28 U.S.C. §§ 2201 and 2202.

21. This Court has personal jurisdiction over Accord Inc. at least because, on information and belief, Accord Inc. is a corporation with its principal place of business in the State of North Carolina, at 1009 Slater Road, Suite 210B, Durham, North Carolina 27703.

22. This Court has personal jurisdiction over Accord Inc. at least because, on information and belief, Accord Inc. directly or indirectly develops, manufacturers, markets and/or sells or intends to market and sell generic drugs throughout the United States and in this judicial district.

4

23. This Court has personal jurisdiction over Accord Ltd. at least because, on information and belief, Accord Ltd. directly or indirectly develops, manufacturers, markets and/or sells or intends to market and sell generic drugs throughout the United States and in this judicial district.

24. This Court has personal jurisdiction over Intas at least because, on information and belief, Intas directly or indirectly develops, manufacturers, markets and/or sells or intends to market and sell generic drugs throughout the United States and in this judicial district.

25. This Court has personal jurisdiction over Accord Inc., Accord Ltd., and Intas at least because, *inter alia*, on information and belief, (1) Accord Inc. itself, and/or in concert with Intas and/or Accord Ltd., has filed an ANDA for the purpose of seeking approval to engage in commercial manufacture, use, offer for sale, sale, and/or importation of the Accord ANDA Product in the United States, including the State of North Carolina; and (2) Accord Inc. itself, and/or in concert with its wholly owned subsidiaries Intas and/or Accord Ltd., will market, distribute, offer for sale, and/or sell the Accord ANDA Product in the United States, including the State of North Carolina, upon approval of ANDA No. 218100, and Accord will derive substantial revenue from the use or consumption of the Accord ANDA Product in the State of North Carolina.

26. If Accord Ltd.'s connections with the State of North Carolina and the instant judicial district are found to be insufficient to confer personal jurisdiction, then, on information and belief, Accord Ltd. is not subject to jurisdiction in any state's courts of general jurisdiction, and exercising jurisdiction over Accord Ltd. in the instant judicial

5

district is consistent with the United States Constitution and laws.  *See* Fed. R. Civ. P. 4(k)(2).

27.     If Intas' connections with the State of North Carolina and the instant judicial district are found to be insufficient to confer personal jurisdiction, then, on information and belief, Intas is not subject to jurisdiction in any state's courts of general jurisdiction, and exercising jurisdiction over Intas in the instant judicial district is consistent with the United States Constitution and laws.  *See* Fed. R. Civ. P. 4(k)(2).

28.     On information and belief, Intas, Accord Inc., and Accord Ltd. operate as a single integrated business. Accord Inc.'s website indicates that "Accord Healthcare, Inc., the US subsidiary of Intas Pharmaceuticals, is a leading generic pharmaceutical company . . . . In concert with its subsidiaries, Intas markets its products in 85 countries." *See* https://www.accordhealthcare.us/#:~:text=Accord%20Healthcare%2C%20Inc.%2C%20the,its%20products%20in%2085%20countries. (Accessed February 15, 2023).

29.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) as to Accord Inc. at least because, on information and belief, Accord Inc. resides in this judicial district and has a regular and established place of business in this judicial district, and at least because, on information and belief, Accord Inc. has committed or aided, abetted, contributed to, and/or participated in the commission of, acts of infringement of the Patents-in Suit that will lead to foreseeable harm and injury to Plaintiffs by preparing or assisting in preparing the Accord ANDA in the instant judicial district and/or with the intention of seeking to market the Accord ANDA Product nationwide, including within the instant judicial district.

6

30. Venue is proper in this district for Intas pursuant to 28 U.S.C. §§ 1391 and 1400(b) at least because, *inter alia*, on information and belief, Intas is a foreign corporation organized and existing under the laws of India and may be sued in any judicial district in which it is subject to personal jurisdiction, including in this judicial district.

31. Venue is proper in this district for Accord Ltd. pursuant to 28 U.S.C. §§ 1391 and 1400(b) at least because, *inter alia*, on information and belief, Accord Ltd. is a foreign corporation organized and existing under the laws of India and may be sued in any judicial district in which it is subject to personal jurisdiction, including in this judicial district.

**THE PATENTS-IN-SUIT**

**The '451 Patent**

32. The '451 patent, titled "Crystalline Freebase Forms of a Biphenyl Compound," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on September 24, 2013. A true and correct copy of the '451 patent is attached as Exhibit A.

33. Theravance Biopharma R&D IP, LLC is the assignee of the '451 patent. Theravance Biopharma Ireland Limited is the exclusive licensee of the '451 patent. Mylan Ireland Limited is the exclusive sub-licensee of the '451 patent from Theravance Biopharma Ireland Limited.

34. The '451 patent is listed in the Orange Book as covering YUPELRI®.

**The '028 Patent**

35. The '028 patent, titled "Crystalline Freebase Forms of a Biphenyl Compound," was duly and legally issued by the USPTO on September 19, 2017. A true and correct copy of the '028 patent is attached as Exhibit B.

7

36.     Theravance Biopharma R&D IP, LLC is the assignee of the '028 patent. Theravance Biopharma Ireland Limited is the exclusive licensee of the '028 patent. Mylan Ireland Limited is the exclusive sub-licensee of the '028 patent from Theravance Biopharma Ireland Limited.

37.     The '028 patent is listed in the Orange Book as covering YUPELRI®.

### The '081 Patent

38.     The '081 patent, titled "Crystalline Freebase Forms of a Biphenyl Compound," was duly and legally issued by the USPTO on February 4, 2020.  A true and correct copy of the '081 patent is attached as Exhibit C.

39.     Theravance Biopharma R&D IP, LLC is the assignee of the '081 patent. Theravance Biopharma Ireland Limited is the exclusive licensee of the '081 patent.  Mylan Ireland Limited is the exclusive sub-licensee of the '081 patent from Theravance Biopharma Ireland Limited.

40.     The '081 patent is listed in the Orange Book as covering YUPELRI®.

### The '289 Patent

41.     The '289 patent, titled "Crystalline Freebase Forms of a Biphenyl Compound," was duly and legally issued by the USPTO on May 18, 2021.  A true and correct copy of the '289 patent is attached as Exhibit D.

42.     Theravance Biopharma R&D IP, LLC is the assignee of the '289 patent. Theravance Biopharma Ireland Limited is the exclusive licensee of the '289 patent.  Mylan Ireland Limited is the exclusive sub-licensee of the '289 patent from Theravance Biopharma Ireland Limited.

8

43. The '289 patent is listed in the Orange Book as covering YUPELRI® and its approved uses.

### The '531 Patent

44. The '531 patent titled "Methods for Treating Chronic Obstructive Pulmonary Disease," was duly and legally issued by the USPTO on November 1, 2022. A true and correct copy of the '531 patent is attached as Exhibit E.

45. Theravance Biopharma R&D IP, LLC is the assignee of the '531 patent. Theravance Biopharma Ireland Limited is the exclusive licensee of the '531 patent. Mylan Ireland Limited is the exclusive sub-licensee of the '531 patent from Theravance Biopharma Ireland Limited.

46. The '531 patent is listed in the Orange Book as covering YUPELRI® and its approved uses.

### <u>YUPELRI®</u>

47. Plaintiffs are engaged in the business of creating, developing, and bringing to market innovative pharmaceutical products for the treatment of diseases.

48. Plaintiffs' YUPELRI® (revefenacin) is a prescription medicine indicated for the maintenance treatment of patients with chronic obstructive pulmonary disease ("COPD"), a chronic inflammatory lung disease characterized by progressive persistent airflow obstruction. Revefenacin is a long-acting muscarinic antagonist, which is often referred to as an anticholinergic. It is administered long-term as one vial of YUPELRI®, one time each day, by the orally inhaled route via a jet nebulizer.

9

49. FDA regulations require that approved drug products include prescribing information reciting the FDA-approved indication(s) for the drug and related instructions for healthcare providers to safely and effectively administer the drug. *See* 21 C.F.R. § 201.56(a)(1)-(3), (d)(1); 21 C.F.R. § 201.57(a)-(c).

50. Consistent with FDA regulations, the package insert for YUPELRI® includes prescribing information that recites the FDA-approved indication for YUPELRI® and provides instructions for healthcare providers and patients to safely and effectively administer YUPELRI®.

51. Attached as Exhibit F is a true and correct copy of the May 2022 YUPELRI® package insert, which is the current version of the YUPELRI® package insert.

52. YUPELRI® is indicated for the maintenance treatment of patients with COPD. (Ex. F at § 1).

53. YUPELRI® was studied in two 12-week replicate placebo-controlled trials in patients with moderate to very severe COPD. The population had COPD with a mean post-bronchodilator forced expiratory volume in one second ($FEV_1$) percent predicted of 55% (range: 10% to 90%). (Ex. F at § 14.2).

## COPD

54. COPD is a chronic inflammatory lung disease characterized by progressive persistent airflow obstruction. Bronchodilators, such as muscarinic receptor antagonists and β-adrenergic agonists, are used to treat COPD. Such bronchodilators are typically

10

delivered to a patient in need of treatment using an inhalation delivery device, such as a dry powder inhaler, a metered dose inhaler or a nebulizer.

55. Healthcare providers use guidelines from the Global Initiative for Chronic Obstructive Lung Disease, commonly known as the GOLD guidelines, to determine treatment algorithms for COPD patients. The GOLD guidelines are regularly updated, most recently for 2023.

56. The GOLD guidelines grade COPD into mild, moderate, severe, and very severe classifications based on the severity of airflow obstruction. Airflow obstruction is measured as forced expiratory volume in one second ($FEV_1$). According to the GOLD guidelines, severe includes patients with a percent predicted $FEV_1$ of equal to or greater than 30% and less than 50%. According to the GOLD guidelines, very severe includes patients with a percent predicted $FEV_1$ of less than 30%.

57. The GOLD guidelines also call for healthcare providers to assess patients' ability to use an inhaler regularly. Inspiratory flow is recognized as an important factor in successfully using inhalers. The GOLD guidelines state that each dry powder inhaler has a unique internal resistance and patients must create turbulent energy within the device during inhalation to disaggregate the powder into fine particles. The GOLD guidelines continue by instructing healthcare providers to check visually that the patient can inhale forcefully through the device.

58. For many patients, any type of inhalation delivery device can be used to deliver an adequate dose of a bronchodilator. However, for COPD patients having a lower

than normal inspiratory flow rate, nebulizers are sometimes recommended since these patients may be unable to generate a peak inspiratory flow rate ("PIFR") sufficient for proper use of a dry powder inhaler. *See, e.g.*, Mahler, D.A., *Peak Inspiratory Flow Rate as a Criterion for Dry Powder Inhaler Use in Chronic Obstructive Pulmonary Disease*, 14(7) Ann. Am. Thorac. Soc. 1103-07 (Jul. 2017) ("Mahler 2017"); Mahler, D.A. et al., *Comparison of dry powder versus nebulized beta-agonist in patients with COPD who have suboptimal peak inspiratory flow rate*, 27(2) J. Aerosol Med. Pulm. Drug Deliv. 103-09 (Apr. 2014) ("Mahler 2014"). Accordingly, use of a nebulizer for delivery of a bronchodilator has been suggested for COPD patients having a low PIFR.

59. Low PIFR is also referred to as suboptimal PIFR. Low or suboptimal PIFR can be readily established, for example, using the IN-CHECK DIAL® device which can, for example, simulate the resistance of a dry powder inhaler such as the DISKUS® device.

60. If the PIFR value is less than about 60 L/min, the patient may not achieve optimal clinical benefit from a dry powder inhaler. A PIFR of less than 30 L/min is insufficient for a dry powder inhaler.

## ACTS GIVING RISE TO THIS ACTION

61. In a letter dated January 6, 2023, purporting to be notice under 21 U.S.C. § 355(j)(2)(B) and 21 C.F.R. § 314.95 (the "Accord Notice Letter"), Accord notified Mylan Ireland Limited and Theravance Biopharma R&D IP, LLC that it had submitted ANDA No. 218100 to the FDA under Section 21 U.S.C. §§ 355(j)(1) and 2(A), seeking approval to engage in the commercial manufacture, use, or sale of its proposed revefenacin inhalation solution, for oral inhalation (the "Accord ANDA Product"), as a generic version

12

of YUPELRI® in/into the United States, prior to the expiration of the '451 patent, the '028 patent, the '081 patent, the '289 patent, and the '531 patent.

62. On information and belief, Accord included in the Accord ANDA a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) ("Accord Paragraph IV Certification") that, in its opinion and to the best of its knowledge, the '451 patent, the '028 patent, the '081 patent, the '289 patent, and the '531 patent are invalid, unenforceable, and/or will not be infringed by the Accord ANDA Product.

63. Accord filed the Accord Paragraph IV Certification without adequate justification for asserting that the Patents-in-Suit are invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of the Accord ANDA Product.

64. The Accord Notice Letter states that Accord has attached a "detailed statement of the factual and legal basis of Accord's opinion that U.S. Patent Nos. 8541451, 976028, 10550081, 11008289, and 11484531 are invalid, unenforceable, and/or will not be infringed." Accord Notice Letter at 2. Neither the Accord Notice Letter nor its attached "detailed statement" provide any substantive invalidity allegation with respect to the '451 patent, '028 patent, '081 patent, and '289 patent.

65. In the Notice Letter, Accord offered confidential access to portions of its ANDA No. 218100, on terms and conditions set forth in the Accord Notice Letter ("the Accord Offer"). Accord requested that Plaintiffs accept the Accord Offer before receiving access to the Accord ANDA. The Accord Offer contained restrictions that contravene 21 U.S.C. § 355(j)(5)(C)(i)(III).

13

66. On information and belief, the active ingredient of the Accord ANDA Product is revefenacin, which is the same active ingredient in YUPELRI® and the same active ingredient used in the compositions, methods of use, and processes described and claimed in one or more claims of the Patents-in-Suit.

67. On information and belief, Accord asserts in ANDA No. 218100 that the Accord ANDA Product is bioequivalent to YUPELRI®, refers to and relies upon the YUPELRI® NDA, and contains data that, according to Accord, demonstrate the bioequivalence of the Accord ANDA Product to YUPELRI®.

68. On information and belief, Accord is seeking approval to market the Accord ANDA Product for the same approved indication as YUPELRI®.

69. On information and belief, Accord is seeking approval to market the Accord ANDA Product for maintenance treatment of patients with COPD.

70. On information and belief, Accord had knowledge of the '451 patent, the '028 patent, the '081 patent, the '289 patent, and the '531 patent when it submitted and filed ANDA No. 218100.

71. On information and belief, Accord intends to and will infringe, actively induce infringement, and/or contribute to infringement of one or more claims of the Patents-in-Suit upon receiving FDA approval of ANDA No. 218100 and prior to the expiration of the Patents-in-Suit.

72. On information and belief, Accord will commercially manufacture, use, offer for sale, and/or sell the Accord ANDA Product throughout the United States, import the

14

Accord ANDA Product into the United States, and/or induce and/or contribute to such acts promptly upon receiving FDA approval to do so and during the term of the Patents-in-Suit.

73. On information and belief, Accord knows that the Accord ANDA Product is especially made or adapted for use in a way that would infringe the Patents-in-Suit, and is not suitable for substantial non-infringing use. On information and belief, Accord knowingly has taken and intends to take active steps to, and will, induce and/or contribute to infringement of one or more claims of the Patents-in-Suit.

74. On information and belief, Accord uses processes covered by one or more claims of the Patents-in-Suit to prepare the Accord ANDA Product.

75. On information and belief, the Accord ANDA Product resulting from the processes claimed in one or more Patents-in-Suit is and/or is intended to be made, used, offered for sale, and/or sold without material change to the product resulting from the processes claimed by one or more Patents-in-Suit.

76. The Accord ANDA Product resulting from the processes claimed by one or more Patents-in-Suit is not a nonessential and/or trivial component of another product.

77. A definite and concrete, real and substantial, justiciable, and continuing case or controversy exists between Plaintiffs and Accord with respect to infringement of the Patents-in-Suit.

78. This action is being commenced within 45 days of receipt of the Accord Notice Letter.

15

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 8,541,451

79.  Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

80.  Accord's submission of ANDA No. 218100 containing a Paragraph IV Certification to obtain approval from the FDA to engage in the commercial manufacture, importation, use, offer for sale, and/or sale of the Accord ANDA Product in/into the United States prior to the expiration of the '451 patent constitutes infringement, either literally or under the doctrine of equivalents, of one or more claims of the '451 patent under 35 U.S.C. § 271(e)(2)(A).

81.  Accord's commercial manufacture, sale, offer for sale, or use of the Accord ANDA Product within the United States, or importation of the Accord ANDA Product into the United States, during the term of the '451 patent would infringe one or more claims of the '451 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

82.  Accord's commercial manufacture, sale, offer for sale, or use of the Accord ANDA Product within the United States, or importation of the Accord ANDA Product into the United States, during the term of the '451 patent would infringe one or more claims of the '451 patent under 35 U.S.C. § 271(g).

83.  On information and belief, Accord intends to engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of the Accord ANDA Product, and the proposed labeling therefor, immediately and imminently upon the

16

approval of ANDA No. 218100 and any amendments thereto, *i.e.*, prior to the expiration of the '451 patent.

84. On information and belief, Accord had knowledge of the '451 patent when it submitted ANDA No. 218100. Accord's infringement has been, and continues to be, deliberate.

85. Plaintiffs will be substantially and irreparably harmed if Accord's infringement of the '451 patent is not enjoined.

86. Plaintiffs do not have an adequate remedy at law.

**COUNT II**
**INFRINGEMENT OF U.S. PATENT NO. 9,765,028**

87. Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

88. Accord's submission of ANDA No. 218100 containing a Paragraph IV Certification to obtain approval from the FDA to engage in the commercial manufacture, importation, use, offer for sale, and/or sale of the Accord ANDA Product in/into the United States prior to the expiration of the '028 patent constitutes infringement, either literally or under the doctrine of equivalents, of one or more claims of the '028 patent under 35 U.S.C. § 271(e)(2)(A).

89. Accord's commercial manufacture, sale, offer for sale, or use of the Accord ANDA Product within the United States, or importation of the Accord ANDA Product into the United States, during the term of the '028 patent would infringe one or more

17

claims of the '028 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

90. On information and belief, Accord intends to engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of the Accord ANDA Product, and the proposed labeling therefor, immediately and imminently upon the approval of ANDA No. 218100 and any amendments thereto, *i.e.*, prior to the expiration of the '028 patent.

91. On information and belief, Accord had knowledge of the '028 patent when it submitted ANDA No. 218100. Accord's infringement has been, and continues to be, deliberate.

92. Plaintiffs will be substantially and irreparably harmed if Accord's infringement of the '028 patent is not enjoined.

93. Plaintiffs do not have an adequate remedy at law.

## COUNT III
## INFRINGEMENT OF U.S. PATENT NO. 10,550,081

94. Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

95. Accord's submission of ANDA No. 218100 containing a Paragraph IV Certification to obtain approval from the FDA to engage in the commercial manufacture, importation, use, offer for sale, and/or sale of the Accord ANDA Product in/into the United States prior to the expiration of the '081 patent constitutes infringement, either

18

literally or under the doctrine of equivalents, of one or more claims of the '081 patent under 35 U.S.C. § 271(e)(2)(A).

96. Accord's commercial manufacture, sale, offer for sale, or use of the Accord ANDA Product within the United States, or importation of the Accord ANDA Product into the United States, during the term of the '081 patent would infringe one or more claims of the '081 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

97. On information and belief, Accord intends to engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of the Accord ANDA Product, and the proposed labeling therefor, immediately and imminently upon the approval of ANDA No. 218100 and any amendments thereto, *i.e.*, prior to the expiration of the '081 patent.

98. On information and belief, Accord had knowledge of the '081 patent when it submitted ANDA No. 218100. Accord's infringement has been, and continues to be, deliberate.

99. Plaintiffs will be substantially and irreparably harmed if Accord's infringement of the '081 patent is not enjoined.

100. Plaintiffs do not have an adequate remedy at law.

**COUNT IV**
**INFRINGEMENT OF U.S. PATENT NO. 11,008,289**

101. Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

19

102. Accord's submission of ANDA No. 218100 containing a Paragraph IV Certification to obtain approval from the FDA to engage in the commercial manufacture, importation, use, offer for sale, and/or sale of the Accord ANDA Product in/into the United States prior to the expiration of the '289 patent constitutes infringement, either literally or under the doctrine of equivalents, of one or more claims of the '289 patent under 35 U.S.C. § 271(e)(2)(A).

103. Accord's commercial manufacture, sale, offer for sale, or use of the Accord ANDA Product within the United States, or importation of the Accord ANDA Product into the United States, during the term of the '289 patent would induce infringement and/or infringe one or more claims of the '289 patent under 35 U.S.C. §§ 271(b) and/or (g).

104. On information and belief, Accord intends to engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of the Accord ANDA Product, and the proposed labeling therefor, immediately and imminently upon the approval of ANDA No. 218100 and any amendments thereto, *i.e.*, prior to the expiration of the '289 patent.

105. On information and belief, Accord had knowledge of the '289 patent when it submitted ANDA No. 218100. Accord's infringement has been, and continues to be, deliberate.

106. Plaintiffs will be substantially and irreparably harmed if Accord's infringement of the '289 patent is not enjoined.

107. Plaintiffs do not have an adequate remedy at law.

20

108. Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

109. Accord's submission of ANDA No. 218100 containing a Paragraph IV Certification to obtain approval from the FDA to engage in the commercial manufacture, importation, use, offer for sale, and/or sale of the Accord ANDA Product in/into the United States prior to the expiration of the '531 patent constitutes infringement, either literally or under the doctrine of equivalents, of one or more claims of the '531 patent under 35 U.S.C. § 271(e)(2)(A).

110. Unless enjoined, upon FDA approval of Accord's ANDA No. 218100, Accord will infringe one or more claims of the '531 patent by actively inducing infringement by others under 35 U.S.C. § 271(b).

111. On information and belief, upon FDA approval of Accord's ANDA No. 218100, Accord intends to manufacture, market, sell, and offer to sell Accord's ANDA Product with an FDA-approved package insert that will direct healthcare providers and patients in the use of Accord's ANDA Product.

112. On information and belief, Accord will actively and intentionally aid, abet, encourage, participate, and induce others to perform acts that Accord knows will directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '531 patent by marketing Accord's ANDA Product with the FDA-approved package insert.

113. The '531 patent has one independent claim, claim 1, which states:

21

1. A method for treating chronic obstructive pulmonary disease in a patient, the method comprising:

(a) selecting a patient having chronic obstructive pulmonary disease for treatment based on the patient having a peak inspiratory flow rate less than about 60 L/min and a percent predicted force expiratory volume in one second less than about 50 percent; and

(b) administering a pharmaceutical composition comprising about 175 μg of revefenacin, or a pharmaceutically acceptable salt thereof, in 3 mL of an aqueous solution to the selected patient once daily using a nebulizer.

114. A healthcare provider will directly infringe one of more of the claims of the '531 patent. Specifically, a healthcare provider administering Accord's ANDA Product in accordance with Accord's package insert will perform all of the steps of one or more claims of the '531 patent.

115. FDA regulations require that approved drug products include prescribing information reciting the FDA-approved indication(s) for the drug and related instructions for healthcare providers to safely and effectively administer the drug. *See* 21 C.F.R. § 201.56(a)(1)-(3), (d)(1); 21 C.F.R. § 201.57(a)-(c).

116. Consistent with FDA regulations, the package insert for YUPELRI® includes prescribing information that recites the FDA-approved indication for YUPELRI® and provides instructions for healthcare providers and patients to safely and effectively administer YUPELRI®.

117. The package insert for Accord's ANDA Product will be substantially similar to the package insert for YUPELRI® in all material respects.

22

118. Providers of revefenacin review and follow the package inserts for the revefenacin products they use to treat their patients.

119. On information and belief, Accord is seeking approval to market its ANDA Product for the same approved indication as YUPELRI®.

120. The YUPELRI® package insert instructs that YUPELRI® is "indicated for the maintenance treatment of patients with chronic obstructive pulmonary disease (COPD)." (Ex. F at § 1).

121. The "Dosage and Administration" section of the YUPELRI® package instructs that the "recommended dosage is 175 mcg YUPELRI (one 175 mcg unit-dose vial) administered by oral inhalation once daily by nebulizer using a mouthpiece." (Ex. F at § 2).

122. The "Dosage Form and Strengths" section of the YUPELRI® package insert states that YUPELRI® is an "Inhalation solution: 175 mcg of revefenacin in 3 mL of sterile, clear, colorless, aqueous solution in unit dose vials." (Ex. F at § 3).

123. A healthcare provider will select a patient having COPD for treatment with YUPELRI® based on the patient having a PIFR of less than about 60 L/min and a percent predicted force expiratory volume in one second less than about 50%.

124. The YUPELRI® package insert describes the treatment of moderate to very severe patients in Clinical Studies. (Ex. F at § 14.2).

125. According to the YUPELRI® package insert, in Section 14.2, the clinical trials enrolled patients with mean percent predicted $FEV_1$ of 55%. (*Id*.)

23

126. The GOLD guidelines, Table 2.6, categorize severe COPD based on $FEV_1$ of equal to or greater than 30% and less than 50%.

127. A healthcare provider, or a patient at the direction of a healthcare provider, will administer Accord's ANDA Product to the patient once daily using a nebulizer.

128. The YUPELRI® package insert, in Section 2, Dosing and Administration, instructs treating patients by administering YUPELRI® by nebulizer.

129. The GOLD guidelines, such as at pages 69-70, advise healthcare providers to check the patient's ability to use an inhaler.

130. It is known that successful use of dry powder inhalers such as the HandiHaler® requires a PIFR of 60 L/min.

131. A healthcare provider will select a nebulizer for patients with a PIFR of less than about 60 L/min. *See, e.g.*, Mahler 2017; Mahler 2014.

132. On information and belief, Accord specifically intends that its ANDA product, if marketed, would be administered to some patients with moderate to severe COPD having a PIFR of less than about 60 L/min and $FEV_1$ of less than 50%, using a nebulizer.

133. On information and belief, Accord knows that some healthcare providers will select patients for treatment with YUPELRI® based on the patient having a PIFR of less than about 60 L/min and $FEV_1$ of less than 50%.

134. On information and belief, Accord knows, and specifically intends, that some healthcare providers will select patients for treatment with its proposed ANDA product, if

24

marketed, based on the patient having a PIFR of less than about 60 L/min and $FEV_1$ of less than 50%.

135. Plaintiffs will be substantially and irreparably harmed if Accord's infringement of the '531 patent is not enjoined.

136. Plaintiffs do not have an adequate remedy at law.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs respectfully request the following relief:

(a)     A judgment under 35 U.S.C. § 271(e)(2)(A) that Accord has infringed one or more claims of each of the Patents-in-Suit by the filing of ANDA No. 218100;

(b)     A judgment that Accord's manufacturing, using, selling, offering for sale, and/or importing the Accord ANDA Product in/into the United States will infringe one or more claims of each of the Patents-in-Suit under 35 U.S.C. § 271(a), (b), and/or (g);

(c)     A declaration under 28 U.S.C. §§ 2201-02 that if Accord, its officers, agents, employees, parents, affiliates, and subsidiaries, and all persons and entities acting in concert with it or on its behalf, engage in the commercial manufacture, use, offer for sale, sale or importation of the Accord ANDA Product, it will constitute an act of infringement pursuant to 35 U.S.C. § 271(a), (b), and/or (g);

(d)     A judgment under 35 U.S.C. § 271(e)(4)(A) providing that the effective date of any

FDA approval of ANDA No. 218100 under Section 505(j) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(j)) be a date not earlier than the latest expiration date of the '451 patent, the '028 patent, the '081 patent, the '289 patent, and the '531 patent, inclusive of any extension(s) or additional period(s) of exclusivity;

25

(e)     A judgment under 35 U.S.C. §§ 271(e)(4)(B) and 283 providing injunctive relief against Accord, whether alone or in concert with a subsidiary company, to prevent the commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States of the Accord ANDA Product before the expiration of the Patents-in-Suit, inclusive of any extension(s) to patent term;

(f)     A permanent injunction restraining and enjoining Accord, whether alone or in concert with a subsidiary company, from making, using, selling, offering for sale, and/or importing the Accord ANDA Product or any pharmaceutical composition as claimed in the Patents-in-Suit in/into the United States, or practicing any processes or methods as claimed in the Patents-in-Suit, or from actively inducing or contributing to the infringement of any claim of the Patents-in-Suit, before the expiration of the Patents-in-Suit, inclusive of any extension(s) to patent term in accordance with 35 U.S.C. §§ 271(e)(4)(B) and 283;

(g)     Damages or other monetary relief, including costs, fees, pre- and post-judgment interest, and damages under 35 U.S.C. § 271(e)(4)(C), to Plaintiffs if Accord engages in commercial manufacture, use, offers to sell, sale, or importation in or into the United States of the Accord ANDA Product prior to the latest expiration date of the Patents-in-Suit, including any extensions and/or additional periods of exclusivity to which Plaintiffs are or become entitled.

(h)     To the extent the facts show that this is an exceptional case, an award of reasonable attorney fees in this action pursuant to 35 U.S.C. § 285;

(i)     An award to Plaintiffs of any further appropriate relief under 35 U.S.C. § 271(e)(4);

(j)     Costs and expenses in this action; and

(k)     Such further and other relief as this Court may deem just and proper.

Dated: February 17, 2023          Respectfully submitted,

*/s/ John F. Morrow, Jr.*
**WOMBLE BOND DICKINSON (US) LLP**
(John.Morrow@wbd-us.com)
One West Fourth Street
Winston-Salem, North Carolina 27101
Telephone: 336.721-3584
Facsimile: 336.733-8429

Mary W. Bourke (Mary.Bourke@wbd-us.com)
Dana K. Severance (Dana.Severance@wbd-us.com)
Ben Bourke (Ben.Bourke@wbd-us.com)
**WOMBLE BOND DICKINSON (US) LLP**
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320

*Attorneys for Plaintiffs Theravance Biopharma R&D IP, LLC, Theravance Biopharma Ireland Limited, and Theravance Biopharma US Inc.*

*/s/ Melanie Black Dubis*
Melanie Black Dubis
(melaniedubis@parkerpoe.com)
**PARKER POE**
PNC Plaza
301 Fayetteville Street, Suite 1400
Raleigh, North Carolina 27601

27

William A. Rakoczy (wrakoczy@rmmslegal.com)
Kevin E. Warner (kwarner@rmmslegal.com)
Joseph T. Jaros (jjaros@rmmslegal.com)
Matthew V. Anderson (manderson@rmmsle-gal.com)
**RAKOCZY MOLINO MAZZOCHI SIWIK LLP**
6 West Hubbard Street, Suite 500
Chicago, Illinois 60654
(312) 527-2157

*Attorneys for Plaintiffs Mylan Ireland Limited, and Mylan Specialty L.P.*

28